HENDERSON, Administrator, v. J. B. BEAIRD CORPORATION.

SAME v. FRIEDMAN IRON & SUPPLY CORPORATION.

Civil Actions Nos. 753, 754.

District Court, W. D. Louisiana, Shreveport Division.

Jan. 9, 1943.

L. L. James, of Tyler, Tex., T. Logan Bruns, State Enforcement Atty., Office of Price Administration, of New Orleans, La., and Malcolm E. Lafargue, U. S. Atty., of Shreveport, La., for administrator.

Sidney L. Herold and Melvin F. Johnson, both of Shreveport, La., for defendant J. B. Beaird Corporation.

Isaac Abramson, of Shreveport, La., for defendant Friedman Iron & Supply Corporation.

PORTERIE, District Judge.

The two cases took a full day for trial. At the conclusion of the evidence, the Court indicated its leanings, which were in accord with its present decision. Oral argument, however, was offered by the plaintiff and was heard immediately. Thereupon, the case was taken under advisement—the original ten-day restraining order being extended by consent to January 11, 1943—and briefs were requested. On the succeeding day, the Court by letter invited both sides to submit proposed findings of fact and conclusions of law.

Those of the defendant, J. B. Beaird Corporation, are so acceptable that they are adopted as a whole and are, hereby and herewith, made the utterance of the Court:

"Findings of Fact:

"1. The defendant, The J. B. Beaird Corporation, is an old established concern in the city of Shreveport which, prior to the entry of the United States into the present war, was engaged in the manufacture of machinery and machine parts. At the present time, its plant facilities are devoted practically exclusively to the fulfillment of munition contracts with the Ordnance Department of the United States Army. For the carrying out of such contracts, the defendant, in the early part of the present year, began the installation of a large electric furnace for the melting and casting of billets to be used in the manufacture of tank parts. In such process scrap steel is a necessary material, and the consumption of such scrap will be about six hundred and fifty tons per month. In anticipation of the beginning of the operation of the furnace, defendant, in the early part of 1942, gave two purchase orders, of two hundred tons each, to Friedman Iron & Supply Corporation, an established scrap metal concern, for heavy melting steel scrap. This scrap was delivered later in scattered carload shipments, the first being about April 1, 1942, and the last about July 13, 1942, and in twenty-one truckloads, delivered at periods from about February 12, 1942, to May 28, 1942.

"2. Prior to the purchases above referred to, defendant operated only a very small furnace, for the operation of which it had purchased small quantities of scrap at retail. None of the officers or employees of The J. B. Beaird Corporation were specialists in scrap metals, and none had had, prior to the delivery of the four hundred tons here in question, experience in sorting, grading or pricing iron and steel scrap. Price schedule No. 4, issued by the Office of Price Administration pursuant to the provisions of the Emergency Price Control Act of 1942 [50 U.S.C.A. Appendix, § 901 et seq.], is a very long document whose directions are expressed in terms familiar to persons of experience in the business of dealing in steel and iron scrap, but the provisions of which are of great difficulty and complexity to one not familiar with the trade terms and usages of the scrap metal business. At the time of placing the two orders of two hundred tons each, the defendant inquired of the seller whether the price at which the material was to be billed was within the ceiling established by law, and was assured by the seller that the material would be billed at prices within the limit established by the applicable schedule. At the time of the delivery of the scrap, defendant in good faith believed that the billed prices were within the schedule.

"3. After delivery of part of the scrap, the defendant, its officers and employees, through discussions, oral and in the trade papers, began to doubt whether the billed prices were within the schedule. Thereupon, the manager of the defendant's plant called up the State Administrator of the Office of Price Administration at Baton Rouge, by telephone, and requested of the Administrator that he send experts to Shreveport to examine the scrap, with a view to determining the proper price at which settlement should be made. Accordingly, the Administrator sent two iron and steel scrap specialists to Shreveport, to whom the defendant exhibited all its evidence and requested advice as to the proper price to be paid. The two specialists declined to give such advice, stating that such was beyond their powers or functions under the regulations of the Office of Price Administration.

"4. After such disclosure and inability to obtain official advice, the officers and agents of the defendant corporation, upon a study of the applicable schedule, concluded that the proper ceiling price was $13.00 per gross ton, plus $2.50, or $15.50 per gross ton. Settlement was then made upon that basis, there being charged to the seller the difference between the price figured at $15.50 per gross ton and what had been theretofore paid by the defendant under deliveries previously made. That settlement was accepted by the seller, with the understanding that the matter might be submitted to the Office of Price Administration for arbitration, and that further settlement between the parties would be based upon such arbitration.

"5. The Court finds that the defendant never, at any time, entertained the intention of violating the law; that all of its acts in the premises were done in good faith under the bona fide intention of obeying the provisions of the applicable law, regulations and schedules; and that its frank and candid disclosure of the facts to the Office of Price Administration effectually disposes of any contention to the contrary.

"6. The Court finds as a fact that, outside of the specific charges made in the complaint, it is not contended by the Administrator of the Office of Price Administration that the defendant, The J. B. Beaird Corporation, has violated any of the provisions of the Emergency Price Control Act, or has exceeded in its purchases any prices fixed by any schedule issued under the regulations promulgated in virtue of said Act.

"7. Complainant contends that the scrap material falls under the designation of price schedule No. 4 '(19) Cut structural and plate scrap, 2 feet and under'. Such material, under the schedule, has an adjustment of plus $1.50 per ton, or a ceiling price of $14.50 per ton. Defendant settled for the material as being '(16) Punchings and plate scrap' which, under schedule No. 4, has an adjustment of plus $2.50 per ton. Accordingly, the settlement was made by the defendant at $15.50 per ton. If defendant correctly interpreted the price schedule, then the prices at which it settled were well within the ceiling established by schedule No. 4. If complainant is correct as to its construction of this provision of the price schedule, then with respect to the greater portion of the scrap, defendant slightly exceeded the price ceiling, but with respect to that portion of the scrap which was delivered by truck the settlement price was still within the price ceiling.

"The Court finds that the contention of the complainant, upon whom of course is the burden of proof, is not made out by any clear preponderance of the evidence.

"8. If, however, the defendant had been in error in its interpretation of the price schedule, such error would have been a mistake of fact, made in a good-faith attempt to arrive at the proper price to be paid under the schedule by a purchaser not familiar with the customs and terms of the scrap iron trade.

"Conclusions of Law:

"The Court concludes, as a matter of law:

"1. That defendant has not engaged in acts or practices which constitute a violation of any provision of Section 4 of the Emergency Price Control Act of 1942 [50 U.S.C.A. Appendix, § 904].

"2. That the defendant is not about to engage in any acts or practices which constitute, or will constitute a violation of any provision of Section 4 of said Act.

"3. That the Emergency Price Control Act of 1942 does not require the Court to issue an injunction against a defendant who may have technically violated a provision of a price schedule through error of fact, in a good-faith effort to comply with the law, the regulations and the price schedule, and who has no intention of violating the law in any particular.

"4. In any event, the Court holds that the clear burden is on the complainant to show violation of the law, and that as a matter of law such burden has not been discharged in the instant case."

A judgment will be signed, upon presentation, denying injunction and dismissing the action of the plaintiff against the J. B. Beaird Corporation.

The findings of fact as to the Friedman Iron & Supply Corporation are the same as those above concerning the Beaird Corporation, except that the Friedman Corporation had been for a number of years, before the time of the two transactions here, in the steel scrap business, was the one to have fixed solely the low original purchase price, did nothing to ascertain whether or not the ceiling price had been violated, and objected to the adjustment as sponsored and pressed by the Beaird Corporation.

The conclusions of law, as affecting the Friedman Iron & Supply Corporation, are, as follows:

1. Similarly as in the case against the J. B. Beaird Corporation, there is a dearth of direct and positive evidence to substantiate the case of plaintiff on the fact that the scrap was less than one-half inch in thickness.

2. The clear burden is on the complainant to show by the facts to a legal certainty that there has been a violation of the law.

3. As a matter of law this burden has not been discharged in the instant case.

A judgment will be signed, upon presentation, denying injunction and dismissing the action of the plaintiff against the Friedman Iron & Supply Corporation.

If the decision of this court on this want of discharge by the plaintiff of its burden as aforedescribed be reversed, then in the instance of the defendant Friedman Iron & Supply Corporation, we cannot conclude as a matter of law, because of the findings of fact in its case, that there was an effort in good faith on its part to comply with the law and we should then issue the permanent injunction against it.

There was filed in evidence as a preliminary plea a certificate in accordance with Section 62 of Act No. 250 of 1928 of the Louisiana Legislature, showing that as of November 6, 1942, the Friedman Iron & Supply Corporation had been finally dissolved. Neither in person, nor by counsel, did the Friedman Iron & Supply Corporation make any appearance in the case. The Court referred the question of the effect of the dissolution to the trial of the case.

Whether or not the Friedman Iron & Supply Corporation is in such legal existence as to permit the issuance by this court of the writ of injunction against it is a remote and moot question, because of our denial of the issuance of the writ against it.

Judgment will be signed in consonance with the above opinion.