822

BROWN, Administrator, OPA v.
MOLLOY et al.
No. 3302.

District Court, E. D. Pennsylvania.
March 10, 1944.

William N. J. McGinniss, of Philadelphia, Pa., for plaintiff.

John L. DuBois, of Doylestown, Pa., and I. Louis Rubin, of Bristol, Pa., for defendant J. Erwin.

Webster S. Achey, of Doylestown, Pa., for defendants Molloy and Brown.

WELSH, District Judge.

This action is brought under the provisions of the Emergency Price Control Act, Public Law 421, 77th Congress, 2d Session, Chapter 26, 50 U.S.C.A.Appendix, § 925. The Administrator of the Office of Price Administration charges that the defendants sold used farm equipment at prices above those prescribed by Price Regulations No. 133, and amendments, promulgated by the O.P.A. establishing maximum prices for farm machinery and other commodities.

Section 205(a) of the Act provides: "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Section 205(e) provides: "If any person selling a commodity violates a regulation, order, or price schedule * * * the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. * * * If * * * the buyer is not entitled to bring

suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States."

The Administrator seeks in this action an injunction against the defendants under Section 205(a) and triple damages amounting to $4,293.69 under Section 205 (e). The evidence offered at the trial discloses the following facts:

Pursuant to the powers granted in the Act, the Office of Price Administration on April 28, 1942, issued its Maximum Price Regulations No. 133, effective May 11, 1942. Section 1361.1(a) of the regulations declared that "no person shall sell, deliver, or negotiate the sale of any farm equipment at prices higher than the maximum fixed by this regulation." By amendment to the regulations effective Jan. 4, 1943 (sec. 1361.3) a base price for farm equipment was established as "the manufacturers suggested retail price for the same item of farm equipment f.o.b. factory which is currently in effect, or * * * the manufacturer's suggested retail price last issued." "The maximum price applicable to the sale by any person, other than a retail dealer, of any item of used farm equipment", including tractors and hay balers, "shall be 85% of the base price if the item is sold within one year after sale new, and in any other case shall be 70% of the base price."

J. Carroll Molloy, an auctioneer, was engaged by Joseph Erwin to sell at public sale certain farm equipment of Erwin at his farm in Chalfont, Pa. The defendant Newlin Brown, also an auctioneer, was engaged by Molloy to cry the sale which was held on February 5, 1943.

Prior to the sale Molloy, being uncertain as to whether the Price Control Act and the O.P.A. regulations applied to auction sales of used farm equipment, sought a ruling and advice from the War Price and Rationing Board at Doylestown and at the Philadelphia office of the O.P.A. He was unsuccessful in his efforts to obtain official information or rulings with regard to applicable regulations prior to the sale.

At the sale on February 5, 1943, the defendant auctioneers sold in combination a tractor and plow for $1,250. The ceiling price of the tractor under the regulations then in force was $766.50, although there was no ceiling price on the plow. There was also sold a tractor, having a ceiling price of $781.39, in combination with a plow for $1,295.

The defendants at the same sale offered a hay baler upon which there was a ceiling price of $830. Several bids of $900 were received, which the defendants believed was the ceiling price, if it should be found that auction sales of farm equipment were actually subject to this maximum price regulation.

Being faced with the necessity of determining the successful bidder among the several who had bid $900, and in duty bound to procure the highest possible price for their principal, the auctioneers adopted as an expedient the device of auctioning the "delivery" of the baler, to premises of the highest of the bidders willing to purchase the baler at $900. Such "delivery" was sold to the successful bidder for $575 and carried with it the purchase of the baler for $900.

The said sales were made by the auctioneers with the intention of fulfilling their legal duty to procure the best available prices for their principal, and as an expedient method of avoiding maximum price regulations if it were later determined that auction sales of farm equipment were subject thereto. The auctioneers had no knowledge of the applicability of the existing maximum price regulations, although they had in good faith made reasonable efforts to obtain the information from official sources, and they had no intention to violate the law and the regulations.

Defendant auctioneers are continuing in their profession and have since February 5, 1943, complied with all the laws and regulations regarding price control. There is no likelihood of them or of their principal engaging in any acts or practices in violation of the Act. The defendant Molloy has since said sale been appointed a member of War Price and Rationing Board 269.3 at Doylestown by the District Director of O.P.A. at Philadelphia and has become chairman of that board with the commendation of the District Director.

By a further amendment to the Regulations (1361.4) effective February 20, 1943, combination sales of tractors with other items of equipment designed for mounting thereon, and sold as a unit, were expressly declared to be subject to the price ceilings. There was also added a prohibition against evasion of the regulations "by requiring the

buyer to purchase any optional equipment or pay for any services not desired; or * * * by selling through an agent or auctioneer at higher than maximum prices; or by any other hidden or indirect price increases." This regulation, though applicable to sales of the character about which the Administrator now complains, was not in effect at the time of the public sale held by the defendants on February 5, 1943.

By reason of the foregoing facts the Court is asked to conclude that the defendants have violated the regulations, that they must be enjoined from further violations, and that, the Act being mandatory in its terms, the Court has no discretion in the remedy to be applied. If such were the law we would be reluctant to adopt it in this case.

The defendants are all patriotic men of good reputation for honest dealing and known favorably in their community. The worst that could be said of them in this case is that they unwittingly, and after earnest effort to enlighten themselves, violated a regulation which in fact left some reasonable doubt as to its application to rural auction sales. Such doubt is evidenced by the fact that soon thereafter the meaning of the regulation was clarified by amendments expressly covering sales of the character made by the defendants. The court and the administrative officers must realize the unavoidable confusion and uncertainty attendant upon the enactment of emergency laws and the regulations and directives which follow them. No useful purpose could be served nor would public interests be benefited by characterizing these men as violators of the emergency laws enacted for the welfare of the country in its war effort.

The case, however, must turn upon the question of whether the regulations are applicable, and more especially upon the issue as to the power of the court to grant or refuse the injunction sought. As to the first, it now seems clear that sales of used farm equipment "through an agent or auctioneer", those in which the buyer was required "to purchase any optional equipment or pay for any services" and combination sales, were all intended to be covered by the regulations. That fact was not known to the defendants and their conduct was at most a technical violation of the regulations which they thought they had avoided by the devices adopted, while at the same time seeking to comply with those regulations which they thought might apply.

As to the power of the court to deal equitably with such defendants, we are greatly aided by the decision of the United States Supreme Court of February 28, 1944, in the case of Hecht Co. v. Bowles, Administrator, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754. Prior thereto there was some doubt as to the power of the District Court to exercise any discretion in the granting or refusal to grant an injunction in cases where the administrator had shown a violation of the regulations. It had been held that a single violation will support an injunction, Henderson v. Glosser, D.C.Pa. 1942, 46 F.Supp. 458, existence of unusual equitable grounds such as irreparable damage was not necessary as a basis for injunction. Henderson v. Burd, 2 Cir., 133 F.2d 515, 146 A.L.R. 714; Brown v. Bernstein, D.C.Pa.1943, 49 F.Supp. 497. It had also been held that the Act did not require the issuance of an injunction against a defendant who had technically violated the price schedule through error of fact in good faith effort to comply with the schedule. Henderson v. J. B. Beaird Corp., D.C., 48 F.Supp. 252.

In Brown, Administrator, v. Hecht Co., D.C.D.C., Feb. 19, 1943, 49 F.Supp. 528, the court held that the Act does not compel the granting of an injunction or other order, where, in the discretion of the court, no useful purpose would be served, and that a court of equity may not be divested of its equity powers except where the statute is so rigid as to inhibit the application of equitable doctrines. The Court of Appeals on July 22, 1943, reversed the lower court on the ground that the Act is mandatory and that upon a finding of violation an injunction or other order "shall" be granted despite the defendant's past and present good intentions. Brown v. Hecht, 78 U.S.App.D.C. 98, 137 F.2d 689.

The Supreme Court, however, reversed the Court of Appeals in the same case (Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 591, 88 L.Ed. 754, supra) and expressly declared that the Act "falls short of making mandatory the issuance of an injunction merely because the Administrator asks it. * * * 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. City of Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 11 [88 L.Ed.

9]. * * * A grant of jurisdiction to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances".

Although the Court did not reach the question of whether the District Court had abused its discretion, it ably reviewed pertinent equitable principles: "The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims".

The court favored that interpretation of the Act "which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect". The opinion was concurred in by a separate opinion of Justice Roberts who expressly approved the judgment of the lower court, wherein it was held that in view of the manifest good faith of the defendant and in the absence of any likelihood of future violations an injunction would not be in the public interest.

■ In the light of the cases and principles cited we have no hesitancy in concluding that the Act does not demand the granting of an injunction under the circumstances of the present case, nor would such restraining order accomplish any public good. We are satisfied that the defendants made earnest efforts to determine the applicability of the regulations and to follow a course which they believed would not be in violation thereof, that they are not likely to commit any further violation, and they are, therefore, entitled to continue in their careers, without the possible reflection upon them which might arise from the existence of a Federal injunction.

As to the Administrator's claim on behalf of the United States for treble the excess over the ceiling price, we conclude upon the same principles and equitable considerations that no recovery should be allowed, and the claim is denied.

■ It might be noted in passing that there is substantial doubt as to the propriety of the Administrator's claim. The language of the Act very clearly gives the right of recovery to "the person who buys such commodity for use or consumption" as distinguished from those who buy "in the course of trade or business". We take those phrases to mean that a private buyer who purchases for his own use or consumption is given the right to recover compensation for the unlawful advantage taken of him by the seller in exceeding the selling price. But a dealer or other person in the trade or business who purchases above the ceiling price needs no such protection and is not given the same privilege. Numerous reasons may be assigned as the basis of the distinction. A dealer or person in the trade is presumed to know the ceiling price to the same extent as the seller. Such persons should not be given the opportunity of making purchases at an agreed excessive price and then be allowed to recover back any part of the price by a suit based upon a violation in which he was a participating party. These and other possible situations suggest the propriety and purpose of the distinction between the classes of buyers mentioned in the Act.

■ The Administrator's construction of the language assumes that in order to obtain the benefit of the provision the buyer must be one "who buys such commodity for use or consumption other than in the course of trade or business". There would seem to be no logical reason for restricting the privilege to only those persons who buy articles for uses not in any way connected with their trade or business. Such interpretation would mean that a purchaser of a tractor for use on his farm would not be entitled to the redress provided, but a purchaser who bought the same kind of appliance for use in the cultivation of his private estate not maintained as a business would have the right to recover treble the overcharge. This interpretation is strained and illogical and we would not be disposed to adopt it. Subordinating the phrase "other than in the course of trade or business" to the other thoughts expressed in the sentence, seems to clarify its meaning and to justify our impression of what was intended.

The injunction and recovery demanded are denied and the bill is dismissed.